**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 07-cv-00884-REB-KMT

AMY J. STRAILY, individually, and on behalf of herself and all others similarly situated,

    Plaintiff,

v.

UBS FINANCIAL SERVICES, INC.,

    Defendant.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

**Blackburn, J.**

    This matter is before me on **Defendant UBS Financial Services Inc.'s Motion for Summary Judgment** [#87][1] filed May 22, 2008. The plaintiff filed a response [#98] and, following the completion of fact discovery, the plaintiff filed an amended response [#124]. After the plaintiff filed her amended response, the defendant filed a reply [#134]. I grant the defendant's motion.[2]

    I note that the defendant filed a second and different motion for summary judgment [#149] on February 23, 2009, and the plaintiff filed a response [#156] on March 16, 2009. Some of the arguments and authorities presented by the parties in those documents are

---

    [1] "[#184]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

    [2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

related to the arguments and authorities they present in relation to UBS's May 22, 2008, motion for summary judgment [#87]. Although I do not address and resolve the second motion for summary judgment [#149] in this order, I have considered the arguments and authorities presented by the parties in their later filings to the extent those arguments and authorities are related to the first motion for summary judgment [#87].

## I. JURISDICTION

I have putative jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of**

2

*Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III. FACTS

This statement of facts is drawn from the parties' briefs. The parties' filings indicate that there is no genuine issue of material fact related to the issues addressed in the defendant's motion for summary judgment. The parties agree on the relevant sequence of events and on the content of the relevant contract documents.

The plaintiff, Amy Straily, maintained certain brokerage accounts with the defendant, UBS Financial Services, Inc. (UBS). Straily's initial agreements with UBS are reflected in Exhibits A-1 and A-2 to UBS's motion for summary judgment [#87].[3] Both agreements provide that UBS would sweep available cash balances in the investment accounts into a money market mutual fund, and that the "'sweeps' shall be made pursuant to [UBS's] then policies and procedures, which may be amended from time to time …." *Exhibit A-1* at UBS00005; *Exhibit A-2* at UBS00008. The parties refer to the action of directing a customer's non-invested funds in a UBS account to another account as an "account sweep" or "sweeps." Straily's agreements with UBS provide also that "upon prior written notice to [Straily], [UBS] may change the terms of this Agreement at any time," and that "[i]f [Straily] does not agree to the changes, [Straily] will notify [UBS] of

---

[3] These agreements are between Straily and PaineWebber Incorporated. However, Straily does not dispute that Exhibits A-1 and A-2 reflect the original agreements that established her relationship with UBS. It is apparent that UBS is the successor to Paine Webber with regard to Straily's accounts.

[Straily's] refusal and [Straily's] Account will be cancelled." *Exhibit A-1* at UBS00006; *Exhibit A*-2 at UBS00009.

In July of 2003, UBS proposed a change to the terms of its agreements concerning the sweep feature. UBS delivered to Straily a letter and disclosure statement concerning the deposit account sweep program. *Motion for summary judgment* [#87], Exhibit A-3 (2003 Amendment Notice). Both the letter and the notice informed Straily that under the new account sweep program, uninvested cash balances automatically will be deposited, or swept, "without limit into FDIC-insured deposit accounts at our affiliate, UBS Bank USA . . . ." *Id.* at UBS00010, UBS00013. The notice states that UBS Bank "is an affiliate of UBS Financial Services Inc. and a wholly owned subsidiary of UBS AG . . . ." *Id.* at UBS00013. Straily did not object to the amended contract terms stated in the 2003 Amendment Notice.

A section of the notice titled "**Interest**" provides, *inter alia*, that the interest rate for the sweep account

> will be established periodically by the Bank based on prevailing business and economic conditions. It is expected that different clients will receive different interest rates based on the nature and scope of their relationships with UBS Financial Services Inc. and the Bank. Generally the deposits of clients in higher eligible asset tiers will receive higher interest rates than deposits of clients in lower eligible asset tiers.

*Id.* at UBS00016. The notice then defines six asset tiers. Straily's assets deposited with UBS placed her in the lower tiers. The notice then states that "the interest rates paid on the [new sweep accounts] will . . . exceed, meet or be lower than the prevailing rate of return of the Sweep Funds." *Id.* As defined in the notice, Sweep Funds are deposited in money market mutual funds.

The 2003 Amendment Notice discussed also the financial benefit UBS expected to gain from the new sweep account arrangement. The notice informed customers that UBS

4

would "receive a fee from the Bank of up to one-half of one percent of the average daily deposit balance held by the Bank." *Exhibit A-3* at UBS00017. A section of the notice titled "**Benefits to UBS Financial Services Inc., UBS Securities LLC and UBS AG**," explained that UBS would receive fees for providing "operational and other services" to the Bank. *Id*. It disclosed also how UBS Bank expected to profit, including that UBS Bank would likely be more profitable for UBS than the UBS money market funds:

> The Bank intends on using the cash balances in the Deposit Accounts to fund current and new lending activity. The Bank will seek to make a profit by achieving a positive "spread" between (a) the amount of interest which it pays for deposits and (b) the sum of the amount of interest which it charges for loans and the return on investments made with any deposits that it does not need to fund loans. **The income (or "spread") that the Bank will be able to earn from its lending and investment activity is expected to be significantly greater than the fees earned by UBS Financial Services Inc. from managing and distributing the [money market] Sweep Funds.**

*Id*. at UBS00017-00018 (emphasis added).

Under the terms of the agreements, New York law controls. "This Agreement, its enforcement, and the relationship between you and UBS Financial Services shall be governed by the laws of the State of New York . . . without giving effect to the choice of law or conflict of laws provisions thereof." *Exhibit A-1* at UBS00006; *Exhibit A-2* at UBS00008.

In her amended complaint [#3] filed May 7, 2007, Straily alleges that UBS violated its fiduciary duties to Straily when it directed non-invested funds in Straily's account to be deposited in accounts with UBS's affiliate, UBS Bank, where the funds earned below-market interest, rather than directing such funds to accounts that earned market-rate interest. *Plaintiff's Amended Class Action Complaint* [#3], filed May 7, 2007, ¶ 36. Straily alleges also that UBS's direction of non-invested funds to such accounts violated the implied covenant of good faith and fair dealing. Straily seeks to pursue her claims as a

5

class action, although no class has been certified. UBS seeks summary judgement on both of these claims.

## IV. BREACH OF FIDUCIARY DUTY

To establish a claim for breach of fiduciary duty, the plaintiff must prove: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages caused by the breach. ***See, e.g., Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.***, 244 F.R.D. 204, 214 (S.D.N.Y.2007). In this case, the key issue is whether or not UBS breached its fiduciary duty to Straily.

The brokerage contracts between Straily and UBS established an agency relationship. ***Jaksich v. Thomson McKinnon Securities, Inc***., 582 F.Supp. 485, 502 (D.C.N.Y.,1984). UBS, as a broker and agent of Straily, owed fiduciary duties to Straily. ***Conway v. Icahn & Co., Inc.***, 16 F.3d 504, 510 (2nd Cir. 1994) (applying New York law). Under New York law,

> (t)he crucial factor in determining whether a broker has been "entrusted" with particular matters such that a fiduciary obligation attaches, appears to be whether the broker exercises discretion over those matters. In other words, " [i]n the absence of discretionary trading authority delegated by the customer to the broker ... a broker does not owe a general fiduciary duty to his client."

***Press v. Chemical Inv. Services Corp***., 988 F.Supp. 375, 386 (S.D.N.Y.1997) (quoting ***Bissell v. Merrill Lynch & Co., Inc.***, 937 F. Supp. 237, 246 (S.D.N.Y. 1996)).

UBS argues that under the terms of the 2003 Amendment Notice, it was required to sweep uninvested funds in Straily's accounts into an account at UBS Bank, as detailed in the notice. Under the terms of Straily's contracts with UBS, the handling of uninvested funds is not entrusted to UBS's discretion. Rather, the handling of such funds is addressed specifically in and controlled by the terms of the contracts between Straily and

6

UBS. In this circumstance, UBS does not owe Straily a fiduciary duty concerning this specific issue, the handling of univested funds, because UBS had no discretion concerning the handling of uninvested funds. Rather, UBS was required to abide by the terms of its contracts with Straily. UBS cannot be said to have breached its fiduciary duty to Straily when UBS complied with the contractual terms to which Straily had agreed.

In response to UBS's arguments, Straily does not argue that the 2003 Amendment Notice was not sufficient, under the terms of her original contracts with UBS, to amend the terms of her contracts with UBS. However, Straily does argue that the 2003 Amendment Notice did not effectively amend her contracts with UBS because UBS breached its fiduciary duties to Straily by not providing adequate disclosures in the 2003 Amendment Notice. Straily argues that the terms of the 2003 Amendment Notice constituted a conflict of interest for UBS because, under those terms, UBS was authorized to sweep Straily's funds into a bank associated with UBS where the funds would earn below-market rates of interest. Further, Straily argues, UBS benefitted financially from this arrangement while Straily suffered financially. She cites evidence that UBS benefitted financially from the new account sweep arrangement described in the 2003 Amendment Notice while Straily earned lower rates of interest on her sweep account than she previously had been earning. In light of the existing fiduciary duties of UBS, Straily asserts, UBS was obligated to disclose clearly the effect of the terms outlined in the 2003 Amendment Notice but UBS failed to give her adequate disclosure. Straily amplifies her argument on this point in her recent response [#156] to a second and different motion for summary judgment [#149]. I disagree with Straily's contention.

I note first that Straily's responsive arguments address a claim not alleged by Straily in her amended complaint [#3] filed May 7, 2007. Straily alleges that UBS violated

its fiduciary duties to Straily and breached the covenant of good faith and fair dealing when UBS directed non-invested funds in Straily's account to be deposited in accounts with UBS's affiliate, UBS Bank, where the funds earned below-market interest, rather than directing such funds to accounts that earned market-rate interest. Nothing in the amended complaint [#3] indicates that Straily bases her claim on the assertion that UBS breached its fiduciary duties or the covenant of good faith and fair dealing when UBS failed to disclose clearly the effect of the terms outlined in the 2003 Amendment Notice. Notably, Straily does not mention the 2003 Amendment Notice in her complaint. While new allegations in a response to a motion for summary judgment may be considered to be a request to amend the complaint, ***Martinez v. Potter***, 347 F.3d 1208, 1211 (10th Cir. 2003), Straily has not made a formal request to amend her complaint. It is far from certain that amendment of the complaint would be permitted based on Straily's responses to the motion for summary judgment.

### A. Jurisdiction & SLUSA

UBS argues that if Straily is asserting a breach of fiduciary duty claim based on alleged misrepresentations and/or omissions in UBS's 2003 Amendment Notice, then the Securities Litigation Uniform Standards Act of 1998 (SLUSA) strips this court of jurisdiction over such a claim. Under 15 U.S.C. § 78bb(f)(1), part of the SLUSA,

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging --
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

8

The term covered class action is defined in § 78bb(f)(5)(B) and Straily's breach of fiduciary duty claim, to the extent it is based on claims of misrepresentation or omission in the 2003 Amendment Notice, falls within that definition.

Straily is a private party who has brought a fiduciary duty claim under state common law and who proposes to pursue this claim as a class action. As portrayed in her amended response to the motion for summary judgment, Straily's fiduciary duty claim concerns her assertion that UBS had a duty to deposit her uninvested cash into a money market mutual fund, as it did under her original agreements with UBS, and that UBS misrepresented or omitted material facts when UBS sought to change its agreement with Straily concerning the deposit of uninvested cash into a money market mutual fund.

The key question, for the purpose of SLUSA, is whether or not Straily's fiduciary duty claim concerns an alleged omission or misrepresentation "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). The term "covered security" is defined in § 78bb(f)(5)(E) largely by reference to other statutes addressing the regulation of securities. The term "in connection with" is to be given a "broad construction" and the in connection with requirement is satisfied if the alleged misrepresentations or omissions "coincide with a securities transaction - whether by the plaintiff or by someone else." **Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit**, 547 U.S. 71, 82 - 88 (2006) (internal quotation and citation omitted).

Generally, Straily's UBS accounts were accounts that concerned investments in securities. UBS asserts that the money market mutual fund at issue, the original fund to which sweep deposits were made, is a covered security, thus bringing Straily's claim under the bar of § 78bb(f)(1). UBS cites **Horattas v. Citigroup Fin Mkts., Inc**, in support of this proposition. 532 F. Supp. 2d 891, 899 (W.D. Mich. 2007) (Munder mutual funds

and cash held in Smith Barney money-market funds are covered securities because funds are issued by registered investment companies under the Investment Company Act of 1940). It is difficult to imagine that a money market mutual fund administered by UBS is not a security covered by the federal securities law, but UBS has not cited or provided specific evidence to support this assertion, concerning which I may not take judicial notice under Fed.R.Evid. 201.

Notably, Straily does not argue that the UBS money market mutual fund is not a covered security. Rather, Straily argues that the alleged misrepresentations and omissions were not used "to eliminate the taxable money market sweep," the account that UBS argues is a covered security. *Response to motion for summary judgment* [#156], filed March 16, 2009, p. 18. Instead, Straily asserts that UBS "used a misleading disclosure statement to induce Plaintiff to acquiesce in the sweep to its affiliate bank." Sweeps to UBS Bank, Straily argues, are not covered securities. *Id.*

The misrepresentations and omissions on which Straily now attempts to base her fiduciary duty claim are tied to both the UBS money market mutual fund and the sweeps to UBS bank. The 2003 Amendment Notice affected directly both accounts. If the money market mutual fund is a covered security, then Straily's claim based on UBS's alleged misrepresentations and omissions in the 2003 Amendment Notice were made in connection with the purchase or sale of a covered security, the money market mutual fund. The existing record does not contain evidence that permits me to find that the UBS money market fund is a covered security. However, the nature of Straily's agreements with UBS demonstrates that Straily's UBS accounts concerned the purchase and sale of covered securities. The close relationship of the money market fund associated with Straily's UBS accounts and UBS's purchase of securities on behalf of Straily may be

10

sufficient to tie the money market fund closely to covered securities.  In this circumstance, the money market fund might be seen as falling within the term "covered securities" as used in 11 U.S.C. § 78bb(f)(1).  ***See, e.g., U.S. Mortg., Inc. v. Saxton***, 494 F.3d 833, 843 - 845 (9th Cir. 2007).  On the current record, however, I conclude that there is not sufficient evidence to show a relationship so close that the money market fund, or the UBS Bank sweep accounts, are covered securities.  In short, it is readily conceivable that Straily's fiduciary duty claim, which is based on alleged misrepresentations and omissions in the 2003 Amendment Notice, is connected with the purchase and sale of covered securities.  If that is true, then Straily's fiduciary duty claim is barred by 15 U.S.C. § 78bb(f)(1).  On the current record, however, I cannot yet conclude as a matter of law that the UBS money market fund or the UBS Bank account are covered securities or are so closely tied to covered securities that they should be treated as covered securities.  Therefore, I address Straily's fiduciary duty claim, assuming that I have jurisdiction.

### B.  Analysis of Breach of Fiduciary Duty Claim

Assuming I have jurisdiction over a breach of fiduciary duty claim based on UBS's alleged misrepresentations and lack of disclosure in the 2003 Amendment Notice, I conclude that UBS is entitled to summary judgment on this claim.  Under New York law, an agent must make a full and complete disclosure of any conflict of interest in a transaction conducted for the principal.  ***Guice v. Charles Schwab & Co., Inc.***, 89 N.Y.2d 31, 44, 674 N.E.2d 282, 289 (N.Y. 1996).

> Disclosure indefinite and equivocal does not  set the agent free to bargain for his own account or for the account of a corporation which acts through him alone. If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance.

*Id.*, 89 N.Y.2d at 45, 674 N.E.2d at 289.

11

Assuming UBS had a fiduciary duty to Straily to disclose a conflict of interest in the 2003 Amendment Notice, I conclude that the 2003 Amendment Notice satisfied UBS's disclosure requirements. Again, the notice states plainly that the bank where the relevant funds would be deposited "is an affiliate of UBS Financial Services Inc. and a wholly owned subsidiary of UBS AG . . . ." *Exhibit A-3* at UBS00013. Further, in a section of the notice titled "**INTEREST**," Straily was informed that:

> 1) that the interest rate for the UBS Bank sweep account would be established by the bank based on prevailing business and economic conditions;
>
> 2) that different clients would receive different interest rates, and that clients with higher amounts of money entrusted to UBS would receive higher interest rates;
>
> 3) that six asset tiers defined by specific investment amounts would be used initially to determine the applicable interest rates; and
>
> 4) that "the interest rates paid on the [new sweep accounts] will . . . exceed, meet or be lower than the prevailing rate of return of the Sweep Funds" in the money market accounts  As defined in the notice, Sweep Funds are deposited in money market mutual funds.

*Exhibit A-3* at UBS00016. Finally, the notice informed Straily of the benefits UBS would derive from the new arrangement, including:

> 1) that UBS would receive a fee of up to one-half of one percent from UBS Bank based on deposits in the new UBS Bank sweep accounts, as well as fees for other services; and
>
> 2) that UBS Bank would seek to make a profit from the deposits in UBS Bank sweep accounts, and that the income that UBS Bank "will be able to earn from its lending and investment activity is expected to be significantly

> greater than the fees earned by UBS Financial Services Inc. from managing and distributing the [money market] Sweep Funds."

*Exhibit A-3* at UBS00017 - 18. These details are sufficient to "lay bare the truth without ambiguity or reservation," and, thus, to satisfy UBS's duty of disclosure. ***Guice***, 89 N.Y.2d at 45, 674 N.E.2d at 289.

### C. Conclusion

In short, I conclude that, viewing the facts in the record in the light most favorable to Straily, UBS is entitled to judgment as a matter of law on Straily's breach of fiduciary duty claim. It is conceivable that Straily's claim is barred by SLUSA, 15 U.S.C. § 78bb(f)(1), but on the current record I do not have sufficient evidence to support the conclusion that the misrepresentations and omissions alleged by Straily were made in connection with the purchase or sale of a covered security.

Thus, assuming that I have jurisdiction over Straily's claim, and viewing the facts in the record in the light most favorable to Straily, I find that under the terms of Straily's original contracts with UBS, the 2003 Amendment Notice effectively amended Straily's contracts with UBS and that under the new contract terms, UBS was required to place Straily's sweep funds in the UBS account detailed in the 2003 Amendment Notice. UBS cannot be said to have breached its fiduciary duty to Straily by complying with the terms of UBS's contract with Straily. Further, UBS provided Straily with adequate notice of the changes proposed by UBS in the 2003 Amendment Notice, including adequate notice of UBS's close ties to UBS Bank, the likelihood that Straily would earn a relatively low interest rate under the new arrangement, and UBS's intent to earn more money for itself under the new scheme. Even if Straily had properly alleged in her complaint a fiduciary

13

duty claim based on alleged inadequate notice in the 2003 Amendment Notice, UBS is entitled to judgment as a matter of law on such a claim.

## V. BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING

Under New York law every contract includes an implied covenant of good faith and fair dealing. ***Sterbenz v. Attina***, 205 F.Supp.2d 65, 70 (E.D.N.Y. 2002).

> "A party's actions may implicate the implied covenant of good faith when it acts so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties." ***Bank of China v. Chan***, 937 F.2d 780, 789 (2d Cir.1991). "[N]either party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract," or to violate the party's presumed or reasonable expectations. ***M/A-COM Security Corp. v. Galesi***, 904 F.2d 134, 136 (2d Cir.1990).

***Bissell v. Merrill Lynch & Co., Inc.***, 937 F.Supp. 237, 247 (S.D.N.Y.,1996). However, the terms of the written contract govern the relationship between the parties, and a court is "not at liberty to impose obligations inconsistent with those imposed under the written agreement." ***Sterbenz***, 205 F.Supp.2d at 70 (citations omitted). "Accordingly, a party that has acted in compliance with the rights expressly provided in the governing contract cannot be held liable for breaching an implied covenant of good faith." ***Id***. (citation omitted).

The 2003 Amendment Notice effectively amended the contracts between UBS and Straily. Under the amended contract terms, UBS acted in compliance with the terms of its contract with Straily when UBS deposited Straily's sweep funds into an account at UBS Bank. Straily cannot base a claim for breach of the implied covenant of good faith and fair dealing on actions taken by UBS that were in compliance with the specific terms of Straily's contract with UBS. Viewing the facts in the record in the light most favorable to Straily, UBS is entitled to judgment as a matter of law on Straily's claim of breach of the

14

implied covenant of good faith and fair dealing. **FED.R.CIV.P.** 56(c).

## VI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant UBS Financial Services Inc.'s Motion for Summary Judgment** [#87] filed May 22, 2008, is **GRANTED**;

2. That the claims of plaintiff, Amy J. Straily, against defendant, UBS Financial Services, Inc., are **DISMISSED** with prejudice;

3. That **JUDGMENT SHALL ENTER** in favor of the defendant, UBS Financial Services, Inc., against the plaintiff, Amy J. Straily;

4. That the defendant, UBS Financial Services, Inc., is **AWARDED** its costs to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

5. That all other pending motions, including those docketed as [#96], [#135], [#148], and [#149], and the pending objection, docketed as [#137], are **DENIED** as moot;

6. That the Trial Preparation Conference set for April 3, 2009, at 10:00 a.m., and the trial scheduled to commence on Monday, May 4, 2009, are **VACATED**; and

7. That this case is **CLOSED**.

Dated March 24, 2009, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge